**SO ORDERED.**

**SIGNED this 1st day of May, 2013.**



_____Dale L. Somers_____
Dale L. Somers
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| In Re: | ) |
| | ) |
| THE GOLF CLUB OF KANSAS, LLC, | )Case No. |
| | ) |
| Debtor. | ) |

<u>Interim Stipulated Order Authorizing Debtor in Possession to Use Rents,
Profits and Income From Property Pursuant to Section 363 of the United
States Bankruptcy Code and Pursuant to Federal Rule of Bankruptcy
Procedure 4001</u>

*Introduction*

This Interim Stipulated Order is made by and between Chapter 11 Debtor The Golf Club of Kansas, LLC ("<u>Debtor</u>") and secured lender CoreFirst Bank & Trust ("<u>CoreFirst</u>") in order to avoid immediate and irreparable harm to the estate of the Debtor. This Order is an interim stipulation only, pending a final hearing on the Debtor's right to make use of the rents, profits and income identified below. The Debtor has requested that CoreFirst consent to the use of rents, profits and income (collectively, the "<u>Income</u>") generated in connection with the operation of certain real property, and improvements thereon, located at 18145 West 87 Street Parkway, Lenexa, Kansas, and which is operated as a golf course and club. The Debtor has further requested

1

that CoreFirst consent to the Debtor's use of the personal property that secures the indebtedness owed by the Debtor to CoreFirst (the "Personal Property"). Debtor has agreed that CoreFirst has a first, prior, duly perfected and enforceable lien on the real estate, the Personal Property and the Income, and, in turn, CoreFirst has consented to Debtor's use of the real property, to Debtor's use of the Personal Property, and to Debtor's use of the Income, upon the terms and conditions set forth herein.

*Recitals*

  A.  On April 26, 2013 (the "Petition Date"), the Debtor commenced its voluntary case under Chapter II of the United States Bankruptcy Code (the "Code"), as captioned above.

  B.  The golf club is owned by the Debtor and the Debtor is in possession of the golf club and collects the Income that is generated in connection with the operation of the golf club.

  C.  Under Section 363 of the Code, the Debtor is prohibited from using, selling or leasing the Income, which constitutes cash collateral under the Code, unless CoreFirst consents or the Court, after notice and a hearing, authorizes such use, sale or lease. In addition, pursuant to Section 363(c)(4) of the Code, the Debtor is required to segregate and account for all cash collateral in its possession, custody or control or which, after the Petition Date, comes into its possession, custody or control.

  D.  The Debtor and CoreFirst desire that the Income from the golf club be used to preserve and maintain the golf club, to preserve and maintain the Personal Property, and to preserve the ability of the golf club to generate additional Income in the future. CoreFirst is entitled to adequate protection of its interests in the golf club, the Income and the Personal Property.

  E.  This Court has jurisdiction with respect to the Debtor's proposed use and expenditure of the Income, pursuant to 28 U.S.C. Sections 157 and 1334.

  F.  Due and adequate notice of this Stipulated Order and of the hearing thereon has

been provided to the 20 largest unsecured creditors of each of the Debtor's estate, and notice has also been provided to the United States Trustee, all in accordance with Federal Rule of Bankruptcy Procedure ("Rule") 400 I (b).

*Stipulation and Order*

1. <u>Budgeted Expenditures</u>. The Debtor is hereby authorized to use the Income to make expenditures in the ordinary course of the Debtor's business in conformity with the applicable Monthly Budget (as hereinafter defined) as approved by CoreFirst (the "<u>Approved Monthly Budget</u>"), provided, however, the Debtor may exceed the budgeted amount for any line item in the Approved Monthly Budget by up to ten percent without approval by CoreFirst in cases of good-faith emergency for increased expenditure. The Debtor is further authorized to make use of and operate the golf club and the Personal Property in the ordinary course of the Debtor's business.

Commencing May 15, 2013, and continuing on the 15th day of each month thereafter, the Debtor shall deliver a proposed monthly budget in the form of **Exhibit A** attached hereto (the **"**<u>Monthly Budget</u>**"**) to Secured Lender, which shall set forth all anticipated monthly post-petition revenues and expenses that will be paid in the operation of Debtor's business during the next successive month. Each Monthly Budget shall be delivered to CoreFirst on or before the 15th day of the month prior to the month for which the Monthly Budget is proposed. After receipt of the Monthly Budget, CoreFirst shall, within five business days of such receipt, either approve or object to the Monthly Budget, with any objection being set forth in writing and specifying the particular items and amounts objected to. If CoreFirst timely objects to a Monthly Budget or item or amount contained therein, unless the Debtor and CoreFirst agree otherwise, Debtor may not make the expenditure objected to unless and until the Debtor obtains the Court's authorization to make such expenditure, which authorization the Debtor may seek on an expedited basis.

2. <u>Replacement Lien / Superpriority Administrative Expense</u>. As adequate protection, CoreFirst shall have a replacement lien, which shall be a senior and first priority lien, under Section 361 (2) of the Code, in and on all assets of the Debtor now or hereafter existing, and such replacement liens shall be immediately valid, enforceable and fully perfected without the need of any

3

further filing, recordation or other action undertaken by CoreFirst, either Debtor, or any other person or entity. If, notwithstanding the foregoing replacement lien, CoreFirst has a claim arising from either Debtor's use of the Income, CoreFirst shall have a claim having priority over all other administrative expenses, save provided for under Section 507(b) of the Code.

So long as this Order is in effect, Debtor shall not grant or attempt to grant to any person or entity other than CoreFirst a security interest in or lien on any of its assets, including the real estate, the Personal Property or the Income, whether pursuant to Section 364 of the Code or otherwise.

CoreFirst's liens on and in the real property, Personal Property, Income and any other collateral, and its super-priority administrative expense claim described above, are subject to the fees of the United States Trustee allowed by 28 U.S.C. Section 1930. Except with respect to fees payable to the United States Trustee, Debtor waives any and all right to assess, against CoreFirst, the real property, the Personal Property, the Income or any other assets of Debtor that secure the indebtedness owed by Debtor to CoreFirst, any costs or expenses of preserving or disposing of any such assets, whether pursuant to Section 506(c) of the Code or otherwise, and CoreFirst does not agree to any such assessment, subject only to the statements contained in the balance of this paragraph. Notwithstanding such waiver and such non-consent, Debtor has provided a total retainer to Krigel & Krigel, P.C. ("**Debtor's** Counsel"), in the amount of $23,000.00, from funds generated in connection with prepetition operations of the golf club, for payment of filing fees in the amount of $1,213.00 and the balance of which was held in trust by Debtor's Counsel. A portion of the retainer has already been applied to fees and costs generated by Debtor's Counsel pre-petition. The parties have agreed that such remaining funds shall be held in trust by Debtor's Counsel for payment of counsel's fees and expenses as part of the Budget (irrespective of whether actually itemized therein), subject to approval by the Court and subject to the right of CoreFirst and other parties in interest to object thereto with respect to reasonableness.

Further, CoreFirst agrees that once the retainer is exhausted, Debtor may supplement the retainer with monthly installments not to exceed $5,000 per month. CoreFirst further agrees that all attorneys fees and expenses paid to Debtor's Counsel is carved out and not part of the Debtor's estate for the purpose of

any claim by CoreFirst for CoreFirst's superpriority administrative claim.

3. <u>Financial Reporting</u>. As additional adequate protection, Debtor shall provide to CoreFirst, not later than the 25th day of each month:

(a) all reports and documents required to be filed with the Office of the United States Trustee for the previous month;

(b) a report of cash collections, outstanding accounts receivable, and expenditures as of the end of the previous month; and

(c) an income and expense statement, listing items in the same manner as set forth in the Approved Monthly Budget in order to allow for a comparison of such actual revenues and expenses for the applicable month to the budgeted amounts for such revenues and expenses for the applicable month.

4. <u>Adequate Protection Payments</u>. As additional adequate protection, Debtor shall pay to CoreFirst: $15,000 on April 30, 2013; and thereafter on the last day of each month or the first business day thereafter if the last day of the month is a non-business day during the period in which this Order remains in effect. This Order does not address or resolve whether and in what amount Secured Lender is entitled to post-petition interest, fees, costs or charges under its Loan Documents pursuant to Section 506(b) of the Code.

5. <u>CoreFirst's Inspection and Access Rights</u>. Upon reasonable notice, the Debtor shall permit CoreFirst and its agents reasonable access to the real property and to the books and records of the Debtor.

6. <u>DIP Accounts</u>. Debtor shall establish a debtor-in-possession account (the **"DIP Account"**) and shall deposit all Income into the **DIP** Account. All Income received by Debtor and not expended pursuant to the authorization granted in this Stipulated Order shall be retained by Debtor in the **DIP** Account. Debtor shall not open or utilize any other accounts without the prior written consent of CoreFirst.

7. <u>Effective Period</u>. This Order shall remain in effect until August 1, 2013, which is approximately 90 days from the petition Date, or until further order of the Court, but the rights and interests

5

granted to CoreFirst under this Order shall remain in effect following any termination of this Order. Nothing in this Section 7 or otherwise contained in this Order shall prohibit CoreFirst from in any manner seeking termination of the automatic stay under Section 362 of the Code or any other relief to which CoreFirst may believe it is entitled for default under the terms of this Order, including any relief which would result in a cessation of Debtor's use of the Income and/or termination of the effects of this Stipulated Order.

8. <u>Successors and Assigns</u>. The provisions of this Stipulated Order shall inure to the benefit of the Debtor and CoreFirst, and shall be binding upon the successors and assigns of each of them, including any trustee, committee or any other representative now or hereafter appointed and acting as a legal representative of Debtor or exercising any rights, remedies, powers or privileges of Debtor or of Debtor's estate under any chapter of the Code, and shall be further binding on all creditors and other parties in interest.

9. <u>Debtor in Possession</u>. Debtor shall continue to operate its business in the ordinary course of business and in accordance with the provisions of both the Code and this Stipulated Order.

10. <u>Compliance With Insurance</u>. Except as modified hereby, the Debtor shall comply with the terms and provisions of all documents requiring Debtor to maintain all forms of insurance in the same coverage amounts as required under the Loan Documents, and shall provide proof of insurance to CoreFirst upon CoreFirst's reasonable request.

11. <u>Taxes</u>. Debtor shall pay timely all taxes that accrue post-petition which affect the real property or Personal Property, as and when such taxes become due and owing.

12. <u>Defaults</u>. In the event Debtor fails to comply with any terms or conditions of this Order, CoreFirst may so advise counsel for Debtor by telecopy, electronic mail or hand delivery, and if the default is not cured within ten (10) days of the delivery of such notice, Debtor's right to make use of the Income as provided hereunder shall be suspended until further order of the Court. In such event, Debtor and/or CoreFirst may seek a hearing from the Court at the earliest practicable time and date, Debtor shall

have at such hearing the burden of proving that they are in full compliance with the terms and provisions of this Order, and a failure on the part of Debtor to meet such burden shall result in immediate termination of the automatic stay, in favor of CoreFirst, under Section 362 of the Code, and CoreFirst shall be entitled to recommence enforcement of its rights and remedies under its Loan Documents or applicable law.

13. <u>Final Order.</u> The Debtor's immediate ability to use the Income is necessary to avoid immediate and irreparable harm to the golf club and to the Debtor's estate. In order to avoid immediate, irreparable harm to the estate, and pending a final hearing under Rules 400 I (b) and (d), this Order shall be considered to be an order pursuant to Rule 400 I (b)(2) authorizing the use of lncome as allowed under, and subject to, the terms and provisions of this Order between the Petition Date and the conclusion of such final hearing.

###

Submitted by and Agreed to:

KRlGEL & KRlGEL

<u>/s/ Erlene W. Krigel</u>
Erlene W. Krigel
KS Bar No. 70425
4550 Belleview
Kansas City, Missouri 64111
(816) 756-5800
COUNSEL FOR DEBTOR


GAY, RIORDAN, FINCHER,
MUNSON & SINCLAIR, PA

<u>/s/ R. Patrick Reardon</u>
R. Patrick Reardon
KS Bar No. 15518
3500 SW Fairlawn Road
Suite 210
Topeka, Kansas 66614
COUNSEL FOR COREFIRST BANK & TRUST