IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE: )
)
THE GOLF CLUB OF KANSAS, LLC ) Case No. 13-21032
) Chapter 11
Debtor. )

**REPLY OF THE UNSECURED CREDITORS' COMMITTEE TO OBJECTION BY COREFIRST BANK & TRUST TO MOTION FOR APPOINTMENT OF BRUCE J. WONER AND WONER, GLENN, REEDER & GIRARD, P.A. AS ATTORNEYS FOR UNSECURED CREDITORS' COMMITTEE (DOC. # 44)**

**COMES NOW** the Unsecured Creditors' Committee ("Committee"), by and through Woner, Glenn, Reeder & Girard, P.A., and hereby responds to the Objection by CoreFirst Bank & Trust to the Unsecured Creditors' Committee's Motion for Appointment of Bruce J. Woner and Woner, Glenn, Reeder & Girard, P.A. as Attorneys for Unsecured Creditors' Committee (Doc. # 44) ("the objection").

The Committee states as follows:

I.

**Introduction**

CoreFirst Bank & Trust ("CoreFirst") essentially challenges the appointment of the Woner, Glenn, Reeder & Girard, P.A. firm ("WGRG") as attorneys for the Committee on three grounds.1 First, CoreFirst argues that the interests of Rick Farrant and his entities ("the Farrant Parties") are adverse to the other unsecured creditors and therefore the firm is prohibited by 11 U.S.C. § 1103(b) from representing both the Farrant Parties and the Committee. Second, CoreFirst states that the Committee has failed to demonstrate specific facts for the necessity of the employment or that the employment will create a material benefit to the

---

1 CoreFirst has also challenged the reasonableness of WGRG's attorney's fees. That assertion raises questions of fact that will be addressed at the evidentiary hearing scheduled for August 16, 2013.

00210071

estate. Third, it is suggested that the Committee's fees should not be paid from CoreFirst's cash collateral without adequate protection.

As more fully explained below, these grievances do not warrant denial of the motion. The Bankruptcy Code provides a committee with a fundamental right to choose its own counsel that will only be displaced upon real proof of an adverse conflict of interest. CoreFirst failed to meet its burden of proof to demonstrate the existence of an adverse interest by offering only conjecture and speculation about the motives of the Farrant Parties. Furthermore, the Bankruptcy Code expressly recognizes that an unsecured creditors' committee plays an important role in enhancing the likelihood of confirming a Chapter 11 plan and further contemplates that such a committee is entitled to have counsel of its choice to aid it in navigating that process. No further showing of benefit to the bankruptcy estate is required. Finally, this Court has the authority to impose a carve-out from CoreFirst's cash collateral so that the Committee has the benefit of employing counsel.

## II.

## Analysis

### A. CoreFirst Failed to Carry its Burden to Prove the Farrant Parties hold Adverse Interests

An official committee has a fundamental right to select counsel of its own choice.2 The only limitation on this fundamental right is 11 U.S.C. § 1103(b) which prohibits a committee's attorney from representing another person or entity holding an interest adverse to the committee.3 CoreFirst correctly acknowledges that simultaneous representation of a committee and another creditor does not necessarily

---

2 In re *Hecks, Inc.* 83 B.R. 410, 417 (S.D. W. Va. Feb. 4, 1988)("the cases where motions for approval of counsel have been denied or counsel have been dismissed illustrate the extreme circumstances necessary to warrant such action.").

3 "Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest." 11 U.S.C. § 1103(b).

00210071

disqualify the attorney from serving as the committee representative.4 If attorneys were forced to choose between their pre-existing clients and serving as committee counsel, the committee's right to its choice of competent counsel would be frustrated.5 Prior to 1984, attorneys were forced to choose; meaning, that often committees did not receive their first choice of counsel. Consequently, congress amended the Bankruptcy Code to bar simultaneous representation only where the interests of the creditor and the committee are adverse.6

Naturally arising conflicts between individual creditors and a committee are too remote to create a disqualifying conflict of interest or appearance of impropriety.7 Likewise, mere potential for a difference to arise between the committee and one of the creditors is not a disqualifying conflict.8 Instead, courts recognize adverse interests to exist in situations where the assertion of an economic interest would tend to lessen the value of the bankruptcy estate or create the potential for a dispute in which the estate would become a rival claimant.9 Therefore, disqualification for an adverse interest requires some allegation or evidence that there is an actual dispute or difference between the committee and the creditor, such as the potential for an action against the creditor or a dispute between the creditor and the committee or one of its members.10 While § 1103(b) serves the purpose of preventing conflicts

---

4 *In re National Liquidators*, 182 B.R. 186, 191-92 (S.D. Ohio 1995).

5 Id.

6 Id.

7 Id.

8 *In re Universal Building Products*, 486 B.R. 650, 662 (2010).

9 *In re National Liquidators*, 182 B.R. 186, 192 (S.D. Ohio 1995).

10. Id.

00210071

of interests, courts recognize that the fundamental right of a committee to choose its own counsel is not to be disturbed lightly.

> Congress intended substance to prevail over form. Where the representation does not entail an actual or potential conflict of interest or present an appearance of impropriety, § 1103(b) is not to be interpreted to preclude a committee from engaging counsel of its choice and one in whom it has confidence will best serve the interests of the creditors represented by the Committee.11

Where a firm represents compliance with § 1103(b), the party alleging a conflict carries the burden to produce evidence of the conflict.12 Here, the proof underlying the alleged conflict is that the Farrant Parties have a history of purchasing distressed golf courses and that Farrant "has the interest and ability to buy the Golf Club's golf course and add it to the Great Life operation."13 CoreFirst's conjecture and speculation about Farrant's motives are insufficient to meet the evidentiary hurdle imposed by § 1103(b).

### B. WGRG's Services are Necessary and Compensable under 11 U.S.C. §§ 1103 and 330

CoreFirst critiques the Committee's motion in that it "does not contain any indication of a recovery action, claim, adversary proceeding, or objection that the Committee intends to prosecute."14 CoreFirst goes on to state that "It appears instead as though the Committee simply wishes to have an attorney on hand to facilitate the Committee's responsibilities." Citation is made by CoreFirst to the case of In re *Energy Partners, Ltd*.15 for the proposition that professionals retained by a committee must provide a material benefit to the estate. CoreFirst's reliance on that case is misplaced.

---

11 In re *Lion Capital Group*, 44 B.R. 684, 689 (Bankr. S.D.N.Y. 1984).

12 In re *AOV Industries, Inc.*, 798 F.2d 491, 495-96 (D.C. Cir. 1986).

13 Objection, Doc. # 44 para 17.

14 Objection, Doc. #44, para 29.

15 409 B.R. 211, 224 (Bankr. S.D. Tex. 2009).

00210071

In *Energy Partners*, the equity security holders committee sought to employ not an attorney, but rather investment bankers with a non-refundable aggregate fee of $1 million which the bankruptcy court declined to approve.[16] Courts subsequent to *Energy Partners* have explained that a "material benefit" to the estate should not be equated with a quantifiable or monetary return.[17] The reality is that administrative services that further the bankruptcy process are as equally compensable as those services that provide a monetary benefit.[18] There is no dispute that attorney services to assist an unsecured creditors' committee in performing its duties under the Bankruptcy Code are compensable from the bankruptcy estate.[19]

> Section 330(a)(1) of the Bankruptcy Code allows compensation for only actual, necessary services. Services necessary under section 330 are those services that aid the professional's client in fulfilling its duties under the Code. In the case of an unsecured creditors committee, necessary services are those rendered to the committee in connection with the committee's performance of its functions under 11 U.S.C. § 1103(c).[20]

The Tenth Circuit Bankruptcy Appellate Panel has made clear that the bankruptcy estate can be benefited even where an attorney's services have no "economic impact" on the estate.[21] In the case of In re *Double J Cattle Co.*, the debtor's attorney in a Chapter 12 bankruptcy was denied a fee under § 330 on the

---

16 Id at 215.

17 In re *MSB Energy, Inc.* 450 B.R. 659, 664 (Bankr. S. D. Tex. June 17, 2011) ("a service may benefit the estate without resulting in a quantifiable or monetary return."); In re *JNS Aviation, LLC*, 2009 Bankr. LEIS 8, 2009 WL 80202, at *8 (Bankr. N.D. Tex. Jan. 9, 2009) ("The Court does not construe the benefits analysis to require that each expenditure of time result in a quantifiable benefit to the estate.").

18 In re *Kusler*, 224 B.R. 180, 184 (Bankr. N.D. Okla. 1998).

19 In re *Lifschultz Fast Freight, Inc.*, 140 B.R. 482, 487 (Bankr. N.D. Ill. May 29, 1992)("Services compensable from the estate have always been actual and necessary services, defined to include services actually rendered that are necessary to the administration of the case or aid the represented party in fulfilling that party's duties under the Bankruptcy Act or Code. Actual and necessary services have never been limited to services that added money to the estate.").

20 Id at 485-488 ("allowing counsel for the committee to collect fees only when their work brings value into the estate creates a conflict of interest.").

21 In re *Double J Cattle Co.*, 1997 Bankr. LEXIS 1738, *19 (10th Cir. BAP 1997) ("the concept of benefit to the estate is not restricted to an economic dollar for dollar interpretation.").

00210071

basis that there was no equity in the debtor's assets and therefore no return to creditors.22 In reversing the bankruptcy court, the Tenth Circuit BAP explained that § 330 expressly authorizes fees necessary to the administration of the bankruptcy estate.

> [A] bankruptcy judge may award compensation for services that were: reasonably likely to benefit the estate, **necessary to its administration**, or not unnecessarily duplicative.23

The Bankruptcy Code clearly contemplates that authorizing an attorney to represent a committee serves a "necessary and helpful role in the reorganization process."24

> Often composed of creditors with no history of coordinated involvement in a case, **committees will usually need the assistance of an attorney if they are to fulfill the mission contemplated by Congress** when it authorized the creation of committees under 11 U.S.C. §1102. For example, experienced counsel will understand the powers and duties of a committee within the bankruptcy process. In appropriate instances, an attorney's participation can facilitate the early development of a confirmable plan. Indeed, the very philosophy of chapter 11 aims to encourage the development of a plan through collaboration between the debtor and the creditors for whom the committee serves as representative. For these reasons, courts will readily approve compensation for those committee counsel who have contributed to the completion of a bankruptcy case.25

Here, the Committee properly moved to authorize WGRG to assist it in fulfilling its role in this bankruptcy case consistent with the parameters of the Bankruptcy Code. This Court should decline CoreFirst's invitation to make the members of the Committee look to their independent counsel or the U.S. Trustee for questions about their responsibilities as a Committee member. The Committee is entitled to be represented by its chosen counsel and the objection of CoreFirst should be overruled.

---

22 Id at *8.

23 Id.

24 In re *Sheehan Memorial Hospital*, 380 B.R. 299, 304 (Bankr. W.D. N.Y. Dec. 21 2007).

25 Id.

00210071

## C. Compensating Committee Counsel from the Estate Preserves the Adversary Process

CoreFirst argues that any compensation for the Committee's attorneys will improperly invade its cash collateral without adequate protection. This argument overlooks the fact that it can be appropriate for a bankruptcy court to mandate a carve-out to pay attorney's fees incurred by an unsecured creditors' committee even where a case appears to be administratively insolvent.26

> It has been the uniform practice in this Court . . . to insist on a carve out from a super-priority status and post-petition lien in a reasonable amount designed to provide for payment of the fees of debtor's and the committees' counsel and possible trustee's counsel in order to preserve the adversary system. Absent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced.27

Here, the interim cash collateral order, while not specifically providing a carve-out to pay the Committee's fees, has only been extended until November 1, 2013 and remains subject to revision by this Court. It would be premature to deny the Committee the benefit of counsel solely upon speculation that the estate will ultimately lack funds to pay administrative expenses.

**WHEREFORE**, the Committee respectfully requests this Court to grant its motion; deny the objection of CoreFirst; and for such other and further relief as is just and equitable.

---

26 In re *Ames Department Stores*, 115 B.R. 34, 38 (S.D.N.Y. 1990); In re *California Webbing Industries, Inc.* 370 B.R. 480, 483 (Bankr. D. R.I. 2007).

27 Id.

00210071

Respectfully Submitted By:

WONER, GLENN, REEDER & GIRARD, P.A.

By: <u>Justin W. Whitney</u>
Bruce J. Woner, #10297
Justin W. Whitney, #23174
5611 Southwest Barrington Court South
P.O. Box 67689
Topeka, KS 66667-0689
Telephone: (785) 235-5330
Facsimile: (785) 235-1615
justin@wonerglenn.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of August, 2013, a true and correct copy of the foregoing was filed with the clerk using the CM/ECF system sending notice electronically to all participating parties.

<u>/s/ Justin W. Whitney</u>
Justin W. Whitney

00210071